UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

**THE GRAY INSURANCE COMPANY**       CIVIL ACTION NO:

                                     DISTRICT JUDGE
**VERSUS**                           HON.

                                     MAGISTRATE JUDGE
**KARL SENNER, LLC**                 HON.

### Complaint for Declaratory Judgment

The Gray Insurance Company (Gray), plaintiff, seeks a declaratory judgment, holding that neither the primary general liability policy nor the excess policy issued by Gray to defendant, Karl Senner, LLC (Senner) provides coverage the claims asserted against Senner for inadequate repair of a thruster as alleged by nonparty Steerprop, Ltd.

### I.     Parties, venue, and jurisdiction

1.

Plaintiff Gray is a Louisiana insurance company authorized to do business and doing business in this state, with its principal place of business in Metairie, Louisiana. Gray issued two insurance policies to Senner: primary CGL policy, No. XSGL-074465, has a policy period of January 1, 2020 to January 1, 2023, attached as Exhibit A, and excess GL policy Policy No. GXS-043544, to Senner, with a policy period of 1 January 2020 to 1 January 2021, attached as Exhibit B.

2.

Defendant Karl Senner, LLC is a Louisiana limited company with its principal place of business in Kenner, Louisiana.

3.

This is an action for declaratory judgment under 28 U.S.C. § 2201 and Fed. R. Civ. P. 57.

4.

This Court has subject matter jurisdiction under 28 U.S.C. § 1333 because Gray issued a marine insurance policy to Senner. A marine insurance policy is a species of marine contract to which federal admiralty jurisdiction applies. Furthermore, the subject matter of this suit involves the repair of a vessel, to which admiralty jurisdiction applies.

5.

Venue is proper in this Court because Gray and Senner are headquartered in the Eastern District of Louisiana and because the policies issued to Senner were delivered in this judicial district.

## II.     The allegations against Senner

6.

On or about January 10, 2024, Steerprop Ltd filed an act in forced intervention in Societe des Treversiers du Quebec (STQ) v Steerprop, Ltd., No. 200-17-035214-238, Superior Court (Civil Division), province and district of Quebec.

7.

In that lawsuit, attached here as Exhibit C, at p. 2, Steerprop alleges that Senner "is a distributor of and service provider for marine transmissions," and that Senner "was an authorized service provider and distributor of Steerprop products."

8.

Steerprop further alleges, at p. 2, paragraph 5, that Senner "was retained to perform the work during the dry dock from January to March 2021 at Chantier Maritime Davie which involved the replacement of the oil seals on the port and starboard horizontal shafts of the verry vessel NM V.-A. – Gauthier," and at paragraph 6, "in the event that the Principal Demand is well founded,

which is denied, [Senner] should be held liable for Plaintiff's claim as it performed the work during the dry dock from January to March 2021 at Chantier Maritime Davie as it appears from its service report [. . .]"

9.

There are no other allegations of fact or law against Senner made by Steerprop.

10.

In the underlying lawsuit, STQ sued Steeerprop and alleges a timeframe that begins on July 13, 2015, when the GAUTHIER entered service, equipped with two Steerprop 120 CRP ECO azimuth propulsors. As alleged by STQ, "in addition to propelling the vessel, these propulsors can rotate three hundred and sixty degrees allowing it to be steered, as appears from [Steerprop drawings] dated March 14, 2014." Exhibit C at p. 35, ¶ 16.

11.

Then, STQ alleges, in January of 2019, the GAUTHER entered dry dock "to undergo repairs following the breakdown of the internal components of the azimuth propulsors, including bearings and gearing," and further, "STQ called on Steerprop to supply original parts, carry out repair work and overhaul the azimuth propulsors."

12.

STQ further alleges that Steerprop, in 2019, "replaced the sixteen (16) Seals of the sealing system."

13.

STQ further alleges that the GAUTHIER left dry dock in December 2019 and returned to service on January 26 of 2020.

14.

STQ further alleges that in September of 2020, the crew of the GAUTHIER "observed the transfer of lubricating oil from the fed tank to the recovery tank of the propulsion system."

15.

STQ further alleges that on November 19, 2020, "the crew observed for the first time a stream of oil on the water behind the F.-A.-Gauthier," and as a consequence, the vessel was withdrawn from service on November 19, 2020. Divers determined that "hydrocarbon-based mineral lubricating oil was being discharged into the sea when the port side azimuth propulsor was running."

16.

None of the allegations above reference Senner. STQ references Senner beginning November 23, 2020, alleging that Senner was "Steerprop's authorized representative in the Americas" and that Senner "went aboard the F.-A.-Gauthier to determine the origin of the leak, identify the cause and fix it." Exhibit C at p. 36, ¶ 32.

17.

STQ continues, alleging that Senner's expert "noted the oil leaks at sea" and "was in direct communication with Steerprop throughout his time on the vessel and made adjustments to the lubrication system following Steerprop's instructions."

18.

STQ further alleges that "neither Steerprop nor Senner were able to identify the cause of the oil discharge into the sea, and their attempts to stop it proved unsuccessful."

19.

STQ further alleges that Steerprop recommended to STQ that STQ "order the necessary parts for the propulsor repair work, including sixteen (16) new replacement Seals from its representative Senner, which STQ did."

20.

STQ further alleges that Steerprop dry-docked the vessel on January 18, 2021, and, with Senner's retention, Steerprop removed the four azimuth propulsor propellers and flanges, which, upon examination, "revealed degradation, delamination as well as the presence of blistering, burning, blisters, damage and signs of premature wear. Senner noted that the lips of the port side oil Seals showed excessive damage, as they were burnt and melted. Senner also noted that the liners were damaged by the Seals."

21.

STQ further alleges that Steerprop was unable to identify the cause of damage and premature wear of the Seals, and that "Steerprop and its representatives replaced the sixteen (16) Seals in the four (4) sealing systems of the two (2) propulsors."

22.

STQ further alleges that sea trials were conducted under the supervision of Steerprop's representatives on March 9, 2021, and that, following sea trials, on April 1, 2021, "oil was observed on the water surface behind the vessel." Steerprop advised STQ to adjust the air pressure in the port recovery tank, but that "oil discharges to the sea were observed on each of the four (4) crossings of the St. Lawrence Estuary made by the vessel on April 1, 2021."

23.

Continuing, STQ alleges that the oil leaks remained unremedied, resulting in another dry-docking in October and November of 2021, but it makes no allegations that Senner was involved – and indeed no reference to Senner at all – in this timeframe.

24.

STQ alleges that Steerprop failed to fulfill its obligations as a professional vendor and as a service provider.

25.

STQ further alleges that Steerprop failed to make repairs with the required diligence, in a safe, appropriate manner and in accordance with accepted usage and good practices.

26.

STQ further alleges that Steerprop failed to ensure the goods sold were free of defects and fit for the purpose for which they were intended.

27.

STQ makes no further allegations and identifies no further theories of fault against Steerprop.

### III.  The Policies

28.

Gray issued two general liability policies to Senner, which, subject to their terms and conditions, provide coverage to Senner.

29.

The first, the primary CGL policy, No. XSGL-074465, has a policy period of January 1, 2020 to January 1, 2023. The GL policy is attached as Exhibit A.

30.

The GL policy, at Section I, Coverage A, provides: "We will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies," and separately, that the insurance applies to property damage "caused by an 'occurrence' that takes place in the 'coverage territory.'"

31.

The GL Policy defines "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

32.

The allegations against Senner in the underlying lawsuit do not constitute an occurrence within the meaning of the primary GL policy and therefore there is no coverage for Senner.

33.

The GL policy, at Section (I)(2)(k), excludes coverage for "'Property damage' to 'your product' arising out of it or any part of it." Separately, "Your product" is defined as "any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by [Senner]," and includes "warranties or representations made at any time with respect to the fitness, quality, durability, performance, or use of 'your product[.]'"

34.

To the extent the allegations against Senner fall within the meaning of Exclusion k of the GL Policy, there is no coverage for Senner.

35.

The GL policy, at Section (I)(2)(l), excludes coverage for "'Property damage' to 'your work' arising out of it or any part of it and included in the products-completed operations hazard." The products completed operation hazard is defined as follows:

a. Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:
   (1) Products that are still in your physical possession
   (2) Work that has not yet been completed or abandoned. However "your work" will be deemed completed at the earliest of the following times:
      a. When all the work called for in your contract has been completed.
      b. When all the work to be done at the job site has been completed if your contract calls for work at more than one job site.
      c. When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

b. Does not include any "bodily injury" or "property damage" arising out of
   (1) The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you and that condition was created by the "loading or unloading" of that vehicle by any insured
   (2) The existence of tools, uninstalled equipment or abandoned or unused materials; or
   (3) Products or operations for which the classification, listed in the Declarations or in a policy Schedule, states that products-completed operations are subject to the General Aggregate Limit.

36.

"Your Work" is defined as follows in the policy:

a. Means:
   (1) Work or operations performed by you or on your behalf; and
   (2) Materials, parts or equipment furnished in connection with such work or operations. The existence of tools, uninstalled equipment or abandoned or unused materials; or
b. Includes:
   (1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and
   (2) The providing of or failure to provide warnings or instructions.

37.

The allegations against Senner constitute property damage to Senner's work within the meaning of the GL policy and there is no coverage for Senner under the GL policy.

38.

The GL policy, at Section (I)(2)(m), excludes coverage for "'Property damage' to 'impaired property' or property that has not been physically injured, arising out of

> (1) A defect, deficiency, inadequacy, or dangerous condition in 'your product' or 'your work'"
>
> [. . .]
>
> This exclusion does not apply to the loss of use or other property arising out of sudden and accidental physical injury to 'your product' or 'your work' after it has been put to its intended use."

39.

The allegations against Senner fall within the meaning of Exclusion m and there is no coverage for Senner under the GL policy.

40.

The GL policy, at Section (I)(2)(n), excludes coverage for:

> "Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:
> (1) 'Your Product';
> (2) Your work' or
> (3) 'Impaired Property'
> If such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, inadequacy, or dangerous condition in it."

41.

The allegations against Senner fall within the meaning of Exclusion n of the GL Policy and there is no coverage for Senner under the GL policy as a consequence.

42.

Gray separately issued a certain excess GL policy (the Excess policy), Policy No. GXS-043544, to Senner, with a policy period of 1 January 2020 to 1 January 2021, attached as Exhibit B, providing, subject to its terms and conditions, excess liability coverage.

43.

The Excess policy provides coverage, subject to the policy's terms, for damages on account of property damage caused by or arising out of each occurrence.

44.

The Excess policy defines "occurrence" as "an accident or happening or event or a continuous or repeated exposure to conditions which unexpectedly and unintentionally results in personal injury, bodily injury, property damage or advertising liability during the policy period.

45.

The allegations against Senner do not constitute an occurrence within the meaning of the Excess policy.

46.

The Excess policy, at Section III (G), excludes claims made against Senner, on the following bases:

(1) On account of Personal Injuries, Bodily Injury or Property Damage resulting from the failure of the Insured's products or work completed by or for the Insured to perform the function or serve the purpose intended by the Insured, if such failure is due to a mistake or deficienciy in any design, formula, plan, specification, advertising material or printed instructions prepared or developed by the Insured but this Section III.G.(1) does not apply to Personal Injuries, Bodily Injury or Property Damage resulting from the active malfunctioning of such products or work;
(2) On account of Property Damage to the Insured's products arising out of such products or any part of such products;
(3) On account of Property Damage to work performed by or on behalf of the Insured arising out of work or any portion thereof, or out of the materials, parts or equipment furnished in connection therewith;

(4) For the withdrawal, inspection, repair, replacement, or loss of use of the Insured's product or work completed by or for the Insured or any property of which such products or work form a apart, if such products, work or property are withdrawn from the market or from use because of any known or suspected defect or deficiency therein.

47.

The allegations against Senner are excluded by the Excess policy's Exclusion G.

48.

Because neither the GL policy nor the Excess policy provides coverage for the claims asserted against Senner in the underlying litigation, neither policy has a duty to defend or duty to indemnify Senner.

49.

WHEREFORE, plaintiff The Gray Insurance Company prays that there be judgment in its favor, holding that there is no coverage under either the GL policy or the Excess policy, and therefore no duty to defend and no duty to indemnify Senner for the allegations against it, and for whatever other just or equitable relief this Court finds proper.

**DATED**: March 21, 2024

Respectfully submitted:

**BOHMAN | MORSE, LLC**

/s/Harry E. Morse
HARRY E. MORSE (#31515)
400 POYDRAS STREET, SUITE 2050
NEW ORLEANS, LA 70130
TELEPHONE: (504) 930-4009
FAX: (888) 217-2744
E-MAIL: HARRY@BOHMANMORSE.COM

*Attorneys for The Gray Insurance Company*